IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00888-FDW-SCR

| | |
|---|---|
| ANGELA MYERS, et. al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NATIONAL ASSOCIATION FOR )<br>STOCK CAR AUTO RACING, INC., et. )<br>al., )<br>)<br>Defendants. ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendants' "Motion to Transfer Venue to the Middle District of Florida Pursuant To 28 U.S.C. § 1404(a)" (Doc. No. 6) as well as the parties' briefs and exhibits (Doc. Nos. 7, 19 & 20).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the Court denies Defendants' Motion as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that Defendant NASCAR, through its website managed by its subsidiary Defendant NASCAR Digital Media, LLC ("NDM"), utilized tracking tools created by Facebook, without seeking or obtaining subscribers' consent, which resulted in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

Defendants have moved pursuant to 28 U.S.C. § 1404(a) to transfer this matter to the United States District Court for the Middle District of Florida, Orlando Division, for the convenience of the parties and witnesses and in the interests of justice. In support of their Motion, Defendants argue that "the balance of private and public factors weighs in favor of transfer," including that they are both Florida limited liability companies with offices located within the Middle District of Florida, that Defendant NASCAR, LLC's headquarters is in Daytona Beach, Florida, and that their key witness, Kari Gritton, works at the Daytona Beach location. (Doc. No. 7 at 5). Defendants also point out that Plaintiffs initially filed an identical action in the Middle District of Florida. See Myers v. Nat'l Ass'n for Stock Car Auto Racing, Inc., No. 6:23-cv-01540 (M.D. Fla. Oct. 25, 2023). Defendants allege that the action was "dismissed without prejudice for Plaintiffs' failure to comply with local scheduling rules." (Doc. No. 7 at 5, 6-7). Defendants contend that because of the dismissal and because other "adverse case law was issued in Florida," Plaintiffs refiled here "[a]pparently hoping for a more favorable judge" and forum. Id. at 5; (Doc. No. 20).

Plaintiffs respond that Defendant NDM is headquartered in Charlotte, North Carolina,[1] and that Plaintiff Sutton resides in North Carolina, in a city adjacent to Charlotte, that multiple party witnesses are located in this District, and that the incidents at issue occurred in the Western District of North Carolina. (Doc. No. 19 at 6-7). Specifically concerning the later point, Plaintiffs allege that:

> NDM manages NASCAR's digital presence; specifically, NASCAR's Website that is at issue in this Action. [Compl. Doc. No. 1 at] ¶¶ 30, 33, 76-93. In connection with Defendants' Website, the video content, hosting of media accessible to newsletter subscribers, and associated coding (including the embedding of the Pixel on the Website's pages), all originate and arise out of the Defendants' business operations in this District – specifically, NDM's Charlotte, North Carolina office. Id.

---
[1] Defendants did not dispute that Defendant NDM is headquartered in Charlotte, North Carolina.

(Doc. No. 19 at 6).

Concerning the allegation of forum shopping, Plaintiffs state:

> The court's sua sponte dismissal of the Myers FL action and the subsequent refiling here was not, however, as Defendants posit, a nefarious plan by Plaintiffs. Rather, after the sua sponte dismissal, Plaintiffs reevaluated the Action, and reached the decision that this District was better suited for the litigation, and their choice for where to re-file it.

(Doc. No. 19 at 6).

Defendants' Motion has been fully briefed and is ripe for determination.

## II. DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." The question of transfer under section 1404(a) is committed to the sound discretion of the district court. See Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991).

Under § 1404, the Court must first determine whether the case could have been brought in the transferee district. Venue is proper in a civil action "in the judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Defendants are Florida limited liability companies with offices located within the Middle District of Florida. Additionally, NASCAR, LLC's headquarters is in Daytona Beach, Florida. Therefore, venue would be proper in the Middle District of Florida.

If venue in the transferee court is proper, as it is here, the Court must then consider whether to transfer venue. "Although '[t]he decision whether to transfer an action under the statute is committed to the sound discretion of the district court. . . [t]he party seeking transfer bears the burden of proving that the circumstances of the case are strongly in favor of transfer.'" Solomon

v. Am. Web Loan, 375 F. Supp. 3d 638, 663 (E.D. Va. 2019) (emphasis in original) (citations omitted); Com. Equip. Co., Inc. v. Barclay Furniture Co., 738 F. Supp. 974, 976 (W.D.N.C. 1990) (noting that a "defendant moving for a transfer of forum from a district in which venue is proper carries a particularly heavy burden.").

The Court considers the following factors in determining whether the matter should be transferred:

> (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws.

Scholl v. Sagon RV Supercenter, LLC, 249 F.R.D. 230, 239 (W.D.N.C. 2008) (citing Jim Crockett Promotions, Inc. v. Action Media Grp. Inc., 751 F. Supp. 93 (W.D.N.C. 1990) and Com. Equip. Co., 738 F. Supp. at 977). In this case, Defendants have "the burden of persuasion and must show (1) more than a bare balance of convenience in [its] favor and (2) that a transfer does more than merely shift the inconvenience." Daramic, LLC v. Entek Int'l, LLC, No. 3:11-CV-676-FDW-DSC, 2012 U.S. Dist. LEXIS 62061, at *5 (W.D.N.C. May 2, 2012) (noting further that the "center of activity" approach to resolving of venue issues does not supplant the traditional change of venue analysis; denying motion to transfer) (citing Datasouth Comput. Corp. v. Three Dimensional Tech., Inc., 719 F. Supp. 446, 451 (W.D.N.C. 1989)). Courts should make both a quantitative and a qualitative analysis of the factors. McDevitt & Street Co. v. Fidelity and Deposit Co., 737 F. Supp. 351, 354 (W.D.N.C.1990).

### A. Plaintiffs' Initial Choice of Forum

Plaintiffs' choice of forum is given considerable weight and, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (citations omitted); see also Brown v. Flowers, 297 F. Supp. 2d 846, 850 (M.D.N.C. 2003) (citing Collins), aff'd, 196 Fed. App'x 178 (4th Cir. 2006). "Such deference is especially appropriate where, as here, plaintiffs do not choose a foreign forum or one bearing little or no relation to the cause of action." Hill-Green v. Experian Info. Sols., Inc., No. 3:19-cv-708, 2020 U.S. Dist. LEXIS 169211, at *14 (E.D. Va. Sep. 15, 2020).

Here, Plaintiffs originally filed in the Middle District of Florida, but after that case was dismissed for failure to comply with the local rules, Plaintiffs now seek to litigate this matter in the Western District of North Carolina where Defendant NDM is headquartered, and where, at least as Plaintiff alleges, the events at issue occurred. Defendants carry a particularly heavy burden when moving pursuant to Section 1404(a) to transfer an action. Borgwarner, Inc. v. Honeywell Intern. Inc., No. 1:07-cv-184, 2008 WL 394991, at *3 (W.D.N.C. Feb. 11, 2008). As this Court has previously stated, it is "black letter law," that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice. . . should not be lightly disturbed." Phillips v. S. Gumpert Co. Inc., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986) (citations omitted).

Defendants argue that Plaintiffs' choice of forum is less controlling in a class action lawsuit. See Dacar v. Saybolt Ltd. P'ship, No. 7:10-CV-12-F, 2011 U.S. Dist. LEXIS 6677, at *10 (E.D.N.C. Jan. 24, 2011); Davis v. Stadion Money Mgmt., LLC, No. 1:19-CV-119, 2019 U.S. Dist. LEXIS 218959, at *10-11 (M.D.N.C. Dec. 20, 2019). While the Court agrees that class actions can be viewed differently and has taken that into consideration here, the Court observes

that there are specific connections between this forum and Plaintiffs' claims that support the decision to refile in this District, namely that Defendant NDM is headquartered in Charlotte, North Carolina, and Plaintiff allegations involve actions that occurred in this District. Galloway v. Big Picture Loans, LLC, No. 3:18-cv-406, 2023 U.S. Dist. LEXIS 223612, at *23 (E.D. Va. Dec. 13, 2023) ("'so long as there is a connection between the forum and the plaintiff's claim that reasonably and logically supports the plaintiff's decision to bring the case in the chosen forum,' even an out-of-state plaintiff's choice of forum, in a class action, is entitled to weight.") (internal citations omitted).

Concerning forum shopping, Plaintiff's clarify that:

> Myers FL was dismissed sua sponte for the failure of the parties (and not just Plaintiffs as Defendants contend, Mot. at 1, 3) to comply with Local Rule 3.02(a)(2). See Myers FL, ECF No. 15; M.D. Fla. L.R. 3.02(a)(2) ("In every proceeding except a proceeding described in (d) the parties: must file a case management report using the standard form on the court's website.") (emphasis added). It was not Plaintiffs choice to have Myers FL dismissed, but rather the product of the parties' [in]action.

(Doc. No. 19 at 12).

Defendants do not dispute that venue is proper in this District. But, to state the obvious, Plaintiffs' choice of forum would be stronger had they initially filed this action in the Western District of North Carolina. Defendants argue that, in addition to the dismissal in the Middle District of Florida, Plaintiffs are attempting to avoid an adverse ruling as set forth in Edwards v. Learfield Commc'ns, LLC, 2023 U.S. Dist. LEXIS 222315 (N.D. Fla. Oct. 6, 2023). This argument falls short. The Court observes, as Defendants recognize, Edwards was decided in the Northern District of Florida and not in the Middle District of Florida.[2] Accordingly, Edwards

---

[2] Moreover, Plaintiffs contend that district courts within the Eleventh Circuit are apparently split on how many factors are needed to constitute being a "subscriber" pursuant to 2710(a)(1). (Plaintiff's brief, Doc. No. 19 at 17 citing Edwards, 2023 U.S. Dist. LEXIS 222315 (N.D. Fla. Oct. 6, 2023) and Lebakken v. WEBMD, LLC, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. Nov. 4, 2022)).

would not be binding on the Middle District of Florida or this District. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 538 n.1 (4th Cir. 2017) (quoting Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011)) ("[a] decision of a federal district court judge is not binding precedent in []a different judicial district")). Defendants may argue whether Edwards is instructive at a future stage of this litigation in either District.

The Court further observes that the present case is factually different from Leyse v. Bank of Am., N.A., No. 3:09-cv-97, 2009 WL 2855713, at *4 (W.D.N.C. Sept. 1, 2009) and separate non-binding cases cited by Defendants in their brief as to improper forum shopping (Doc. No. 7 at 9-10). For example, in Leyse, Plaintiffs sought to circumvent a New York law, which at the time prohibited class actions that seek to recover statutory penalties unless the statute expressly permitted it, and several courts had already rejected "counsel for plaintiff's (as well as plaintiff's) attempts to make end runs around the law in similar cases." 2009 WL 2855713, at *1.

Considering that one Plaintiff resides in North Carolina, Defendant NDM is headquartered in this District, and the events at issue occurred in this District at least as alleged by Plaintiff, the Court finds that Plaintiffs' choice of forum is entitled to great weight and overall favors retention. See Progressive Am. Ins. Co. v. De Pinto, No. 3:21-cv-00006-RJC-DSC, 2022 U.S. Dist. LEXIS 117414, at *9 (W.D.N.C. July 5, 2022) (denying motion to transfer case to Middle District of Florida, in part, because both plaintiffs and defendant resided in North Carolina).

### B. The Residence of the Parties

Parties on both sides are residents of North Carolina and Florida, which tends to weigh more neutral. However, as discussed in more detail above, Defendant NDM being headquartered in Charlotte, North Carolina, which as alleged by Plaintiff is the source of the incidents complained of, ultimately weighs more in favor of retention.

### C. The Relative Ease of Access to Proof

Defendants contend that their key witness, Kari Gritton, is located in Florida. Defendants, however, fail to provide any insight of the importance of Ms. Gritton's testimony over other witnesses based in the Charlotte, North Carolina office. Although information is stored electronically these days and generally can be easily accessed from both North Carolina and Florida, Defendant NDM is headquartered in Charlotte, North Carolina, and consequently, the bulk of the relevant evidence is presumed to be present in this District.[3] Celgard, LLC v. LG Chem, Ltd., No. 3:14-cv-00043-MOC-DCK, 2015 U.S. Dist. LEXIS 66600, at *27 (W.D.N.C. May 21, 2015) ("Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters.") (citations omitted); Quilling v. Cristell, No. 3:04 CV 252, 2006 U.S. Dist. LEXIS 46287, *8 (W.D.N.C. July 7, 2006) (denying motion to transfer because, among other things, "Defendants have done little more than speculate as to where witnesses may or may not be located" and "simply stated," without explanation, that sources of proof were not located in North Carolina); Celanese Acetate, LLC v. Lexcor, Ltd., 632 F. Supp. 2d 544, 549 (W.D.N.C. 2009) ("Defendant's Motion does not provide enough detail as to who these Chinese witnesses will be and why their importance outweighs the importance of witnesses that Plaintiff claims reside here."). Defendants have failed to show that the location of a one witness in Florida would overcome other witnesses and other evidence being present here. This factor favors retention.

### D. The Availability of Compulsory Process for Attendance of Witnesses and the Costs of Obtaining Attendance of Willing Witnesses

Defendants argue that the presence of Ms. Gritton and two Plaintiffs in Florida and only one Plaintiff in North Carolina causes this factor to favor transfer. (Doc. No. 7 at 11). Defendants

---

[3] The Court recognizes that Defendant NASCAR, LLC is headquartered in Daytona Beach, but as Plaintiff contends, Defendant NDM is primarily responsible for the actions giving rise to Plaintiff's claims.

also argue that they will "have to expend resources to appear in North Carolina," but Defendants do not make an argument about the need to compel the attendance of any witnesses for trial. Id. at 11-12 (Defendants state "[t]he compulsory process for attendance will likely not be a problem for either party as most witnesses are likely NASCAR employees or named Plaintiffs."). The remaining Plaintiffs will travel to either District from Kentucky, Massachusetts, Missouri, or California. This factor is, at most, neutral. Com. Equip. Co., 738 F. Supp. at 977-78 (this factor "fails to favor the position of either [party]" because "in reference to the cost of obtaining the attendance of willing witnesses, one party will incur expense and its witnesses will incur inconvenience, regardless of where this trial takes place."); Accretive Com., Inc. v. Kenco Grp., Inc., 2008 U.S. Dist. LEXIS 13784, at *15 (W.D.N.C. Feb. 13, 2008) ("the compulsory process appears to be insignificant under these facts, particularly in light of the fact many of the witnesses are the parties' employees.").

### E. Remaining Factors

The parties only contest the four factors discussed above. Defendants and Plaintiffs seem to agree that relative court congestion, ease of enforcement of a judgment, obstacles to a fair trial and the local interest of each District are neutral.[4] (Doc. No. 7 at 11-12; Doc. No. 19 at 15-16). The Court has independently examined these factors and agrees each of these factors are neutral. Defendants also concede that the factors of possibility of a view, diversity cases being tried in a forum "at home" with state law, and conflicts of laws are not at issue here. (Doc. No. 7 at 9, n.3).

Having considered the factors individually, the Court also considers them cumulatively. Both quantitatively and qualitatively, the factors weigh in favor of retention of this matter in this

---

[4] As Plaintiff points out in its brief, as to the factor regarding court congestion and time to deposition, "Defendants maintain on the one hand that 'this factor is neutral or weighs slightly in favor of transfer[]' yet state 'The Relative Court Congestion and Time to Deposition Are Neutral' on the other hand." (Doc. No. 19 at 9 n. 2 referring to Doc. No. 7 at 11, 12).

District.  However, when evaluating all of the factors, the Court has delineated those factors that weigh in favor of retention or are otherwise neutral or favor transfer, and the Court does not find that Defendants have met their "particularly heavy burden" to show that transfer is proper here. McDevitt & St. Co. v. Fid. & Deposit Co. of Md., 737 F. Supp. 351, 353 (W.D.N.C. 1990).  Defendants have not shown more than a bare balance of convenience in their favor and that a transfer does more than merely shift the inconvenience.  Daramic, LLC, 2012 U.S. Dist. LEXIS 62061, at *5.  Therefore, the Court concludes that the interests of justice and convenience warrant retaining venue in the forum of Plaintiffs' choice.  The Court denies Defendants' Motion to Transfer Venue under Section 1404(a).

**NOW IT IS THEREFORE ORDERED that**:

1. Defendants' "Motion to Transfer Venue to the Middle District of Florida Pursuant To 28 U.S.C. § 1404(a)" (Doc. No. 6) is **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties and to the Honorable Frank D. Whitney.

**SO ORDERED**.

Signed: July 31, 2024

*[Signature: Susan C. Rodriguez]*

Susan C. Rodriguez
United States Magistrate Judge