# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| ANGELA MYERS, OSCAR RODRIGUEZ, PAUL SUTTON, TREVOR ADKINS, BRENT RISH, DEREK SAMMELMAN, and MARY MARTIN, on behalf of themselves and all those similarly situated, | Case No. 3:23-cv-00888-FDW-SCR <br><br> Judge Frank D. Whitney |
| Plaintiffs, | Magistrate Judge Susan C. Rodriguez |
| v. | |
| NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC., and NASCAR DIGITAL MEDIA, LLC, | |
| Defendants. | |

**DEFENDANTS NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC'S AND NASCAR DIGITAL MEDIA, LLC'S RESPONSE IN OPPOSITION TO THE UNITED STATES' MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF THE VIDEO PRIVACY PROTECTION ACT**

## TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | THE VPPA IS FACIALLY UNCONSTITUTIONAL. | 2 |
| | | i. The Statutes Are Unconstitutionally Vague in Violation of Due Process. | 2 |
| | | ii. The VPPA's Regulation On Commercial Speech Does Not Withstand Intermediate Scrutiny. | 3 |
| | |     1. The U.S. Cannot Demonstrate a Substantial Government Interest in Regulating This Particular Speech. | 3 |
| | |     2. The VPPA Does Not "Directly and Materially Advance" the Purported Government Interest. | 4 |
| | |     3. The VPPA Is Not Narrowly Drawn | 6 |
| | B. | THE VPPA, AS APPLIED, VIOLATES DUE PROCESS AND THE FIRST AMENDMENT. | 8 |
| | | i. The Statutes Violate the Due Process. | 8 |
| | | ii. The Statutes Violate the First Amendment. | 8 |
| III. | CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989) ................................................................................................................6

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) .....................................................................................7

*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) .....................................................................................7

*Boelter v. Hearst Commc'ns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) .....................................................................................7

*Brown v. Entertainment Merchants Assoc.*,
   564 U.S. 786 (2011) ............................................................................................................3, 4

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of New York*,
   447 U.S. 557 (1980) ................................................................................................................3

*Fla. Bar v. Went for It, Inc.*,
   515 U.S. 618 (1995) ............................................................................................................3, 6

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 .............................................................................................................................6

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995) ................................................................................................................5

*Sorrell v. IMS Health*,
   564 U.S. 552 (2011) ................................................................................................................5

**Statutes**

18 U.S.C. § 2710(a)(4) ...................................................................................................................2

18 U.S.C. § 2710(b)(2) ...................................................................................................................5

Mich. Comp. Laws. 445.1711(a) ...................................................................................................7

Mich. Comp. Laws 445.1712(1) ....................................................................................................7

Mich. Comp. Laws 445.1713(a) ....................................................................................................7

I.      **INTRODUCTION**

Defendants National Association for Stock Car Auto Racing, LLC* ("NASCAR, LLC") and NASCAR Digital Media, LLC ("NASCAR Digital") (collectively, "NASCAR"), by and through their undersigned counsel, hereby respectfully submit this Response in Opposition to the United States of America's Memorandum of Law in Defense of the Constitutionality of the Video Privacy Protection Act.

As set forth in NASCAR's Motion to Dismiss and acknowledged by the U.S., there are numerous independent grounds on which the Court may decide to dismiss Plaintiffs' suit with prejudice—most of which raise no constitutional questions. (Doc. 22-1.) However, NASCAR also explained in its briefing that the VPPA—passed in 1988 and targeted at brick-and-mortar VHS rental stores—was unconstitutional on its face and as applied, because it restricted lawful speech.

The U.S.'s filing (Doc. 22-1) does nothing to change that view. The text of the statute and a handful of District Court cases denying motions to dismiss are insufficient to provide notice that the VPPA could be interpreted in the manner Plaintiff advocates. Moreover, the only purported interest the U.S. can identify the VPPA as advancing is a generalized privacy interest. The First Amendment requires more, and the U.S. has not shown that the VPPA "directly and materially advances" that governmental interest. Finally, the VPPA is not narrowly drawn to the purported government interest. The explosion of VPPA litigation against companies far removed from renting out VHS tapes—La-Z-Boy, Weight Watchers, General Mills, Hallmark, among many others—is practical, real-life evidence of that fact.

---

* National Association for Stock Auto Racing, Inc. converted to National Association for Stock Car Auto Racing, LLC prior to the filing of the Complaint.

Accordingly, NASCAR respectfully requests that the Court dismiss Plaintiff's suit with prejudice on the bases presented in its Motion to Dismiss and Reply.

## II. ARGUMENT

### A. THE VPPA IS FACIALLY UNCONSTITUTIONAL.

*i. The Statutes Are Unconstitutionally Vague in Violation of Due Process.*

The U.S. argues the VPPA is not vague because a law is only "unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" (Doc. 22-1 at 7.) However, as described below and in NASCAR's Motion to Dismiss and Reply, if the VPPA is interpreted as Plaintiff is advocating, such that a racing sanctioning company and digital marketing company qualify as a "video tape service provider" and a person can bring suit by virtue of signing up for a free email newsletter, then the statute certainly does not sufficiently identify the conduct that is prohibited. (*Id.*) While the VPPA defines "video tape service provider," the terms "similar audio visual materials" and "delivery" within that definition are undefined. 18 U.S.C. § 2710(a)(4). In effect, Plaintiffs seek to use the courts to expand the interpretation of these terms to retroactively sweep NASCAR, among many others, under the statute.

NASCAR was not sufficiently on notice that the courts could interpret the VPPA in such a manner. As explained in NASCAR's Motion to Dismiss and Reply, Plaintiff alleges that the focus of NASCAR, LLC's business is "auto racing sanctioning," (Compl. ¶ 29), and the focus of NASCAR Digital is to manage "NASCAR, [LLC]'s digital presence through websites, mobile apps, the official NASCAR YouTube channel, and the official fantasy league," (*id.* ¶ 30.). No reasonable person of ordinary intelligence would read the text of the VPPA and conclude that the

VPPA applies to business like NASCAR who operate an auto race sanctioning company and its marketing operations.

>   ii. *The VPPA's Regulation On Commercial Speech Does Not Withstand Intermediate Scrutiny.*

A restriction on commercial speech must meet three conditions: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of New York*, 447 U.S. 557, 566 (1980). Neither Plaintiff nor the U.S. can demonstrate any of these requirements—much less all three.

>   1. <u>The U.S. Cannot Demonstrate a Substantial Government Interest in Regulating This Particular Speech.</u>

The U.S. argues that "[t]he VPPA advances a substantial governmental interest" because "[p]rotecting privacy has long been recognized as a substantial governmental interest.'" (Doc. 22-1 at 9 (quoting *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 625 (1995)).) Yet, the U.S. conflates the protection of one's privacy generally with a specific right to privacy in the types of videos individuals watch, under a theory that disclosure will have a chilling effect on their right to receive expressive ideas. The government has no "substantial interest" in restricting disclosure of information concerning video viewing. The U.S. does not even attempt to meet this standard, and could not possibly do so. See *Brown v. Entertainment Merchants Assoc.*, 564 U.S. 786, 792 (2011).

The U.S. argues that *Brown*'s holding is inapplicable here because in *Brown* the speech at issue was unprotected (Doc. 25-1 at 11). However, the holding in *Brown* is still a guiding principle when considering what speech is and is not allowed. And, here, where the general right to privacy

3

4863-6176-5592.2
Case 3:23-cv-00888-FDW-SCR     Document 28     Filed 08/23/24     Page 6 of 15

could be taken and applied to numerous scenarios, it is important to question whether the general right to privacy has a "long tradition of proscription" against sharing video viewing information. If there is not a long tradition of proscription, then how is it clear what information is and is not protected by the general right to privacy? The U.S. has not identified any such evidence of a long tradition of proscription of the disclosure of video viewing information, nor could it do so. It was not until 1988, when Senator Bork's video rental history was released, that Congress suddenly contended that a person's rental, purchase, or delivery history with respect to prerecorded video tapes should be protected. This history does not demonstrate a "long tradition of proscription" sufficient to meet intermediate scrutiny's standard of a "substantial interest." Notably, the U.S. provided no examples of cases involving a concern over persons' video viewing history prior to the passage of the VPPA. "Without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the judgment [of] the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs." *Brown*, 564 U.S. at 792.

2. The VPPA Does Not "Directly and Materially Advance" the Purported Government Interest.

The U.S. argues the VPPA "'directly advance[s]' the government's interest in protecting the privacy of individuals' video viewing choices" because "the VPPA applies to individuals who sell, rent, or deliver video recordings—the only individuals, other than the consumer, likely to have access to the information the statute seeks to keep private." (Doc. 22-1 at 11.) However, what entities the VPPA applies to is not the only consideration in determining whether the VPPA "directly and materially advances" the government interest. Rather, as the U.S. concedes, "the government must 'demonstrate that the harms it recites are real and ***that its restriction will in fact***

4

*alleviate them to a material degree.*'" (*Id.* at 23 (emphasis added) (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)).)

To directly and materially advance the governmental interest "[t]here must be a 'fit between the legislature's ends and the means chosen to accomplish those ends' because "these standards ensure not only that the State's interests are *proportional* to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message." *Sorrell v. IMS Health*, 564 U.S. 552, 572 (2011) (emphasis added). There is nothing proportional about the onerous notice and consent requirements in the VPPA to the need to protect video viewing information, as the VPPA requires consent:

> that—(i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and (III) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election.
>
> 18 U.S.C. § 2710(b)(2).

Indeed, far more information is disclosed about consumers by companies when consumers have agreed to broad reaching privacy policies than what video a person viewed on a public website. The U.S. fails to show that the VPPA's restrictions are proportional and, therefore, the VPPA does not directly and materially advance the government's interest.

5

4863-6176-5592.2

Case 3:23-cv-00888-FDW-SCR     Document 28     Filed 08/23/24     Page 8 of 15

### 3. The VPPA Is Not Narrowly Drawn

Despite declining to address "whether, or by how much, less-restrictive consent requirements could also advance the statute's objectives" (Doc. 22-1 at 13), the U.S. argues that "*Central Hudson* does not require the least restrictive means of regulating commercial speech, but rather a 'fit between the legislature's ends and the means chosen to accomplish those ends' that is 'reasonable.'" (*Id*. (citing to *Fla. Bar*, 515 U.S. at 632 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989))).) The U.S. then conclusively states that "the VPPA is sufficiently narrowly tailored." (*Id*.) This is wrong. Far less restrictive means are dictated for consent or opt-out to companies' broad-reaching privacy policies than the onerous means proscribed under the VPPA that the U.S. argues should cover what video a person viewed on a public website; there is nothing to support that there is a fit between what the VPPA requires and the goals of the VPPA. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 ("'Clickwrap' agreements 'require users to click an 'I agree' box after being presented with a list of terms and conditions of use.'").

Further, the U.S. contends the VPPA is sufficiently narrowly drawn because its "disclosure prohibitions are targeted at the commercial entities most likely to have, and thus, be able to disclose, the information Congress intended to protect." (Doc. 22-1 at 12.) However, if the VPPA is interpreted in the manner advocated by Plaintiffs, then the VPPA is so vague and overbroad that it cannot be targeted at only those entities most likely to possess the information Congress intended to protect. Because the VPPA leaves the term "delivery" undefined, Plaintiffs' interpretation of the statutory term "video tape service provider" would make the VPPA effectively apply to any person or entity that provides even a single video to others that purchase, rent, or subscribe to those videos—or as plaintiffs argue, to any other goods or services offered by the entity.

This is not mere speculation. NASCAR already has pointed out that the vague terms in the VPPA have resulted in an explosion of VPPA litigation, primarily against companies whose businesses look nothing like the brick and mortar "video-tape service provider" Congress intended to regulate. (Doc. 14 at 13.)

Moreover, the U.S.'s reliance on *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ("Hearst I"), *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016), and *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) ("Hearst II")—which all address a Michigan statute that serves the same purported interest as the VPPA but which imposes materially different restrictions—only serves to underscore the VPPA is not appropriately tailored. (Doc. 25-1 at 4-5.) The Michigan statue only requires "written permission of the customer," which is very different than the VPPA's onerous consent requirements. *See* Mich. Comp. Laws 445.1713(a). It explicitly defines "customer" as "an individual who purchases, rents, or borrows a book, other written material, a sound recording or a video recording." Mich. Comp. Laws. 445.1711(a). And unlike the VPPA that vaguely references "delivery," the Michigan statute's disclosure restrictions apply to "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings." Mich. Comp. Laws 445.1712(1). To the extent the Court rejects NASCAR's arguments concerning the appropriate scope of "VTSP" under the VPPA, the Michigan statute would be considerably clearer and narrower than the VPPA.

4863-6176-5592.2

### B. THE VPPA, AS APPLIED, VIOLATES DUE PROCESS AND THE FIRST AMENDMENT.

   *i.*   *The Statutes Violate the Due Process.*

NASCAR's as-applied vagueness challenge succeeds. The U.S. suggests that because courts have applied the VPPA to disclosures to social media companies, NASCAR's argument must fail because it had notice. (Doc. 22-1 at 13.) But the cases the U.S. cites address disclosure whereas NASCAR argues that as-applied, the VPPA is vague because NASCAR is not a VTSP. Moreover, to suggest that NASCAR is on notice because some VPPA cases have survived motions to dismiss is absurd. Neither case the U.S. cites reached judgment on whether the entity was a VTSP, such that there was a ruling that this type of alleged disclosure could violate the VPPA. *Czarnionka v. The Epoch Times Association, Inc.* and *Harris v. Public Broadcasting Service* settled prior to adjudication on the merits. Order, *Czarnionka v. The Epoch Times Association, Inc.*, No. 1:22-cv-06348 (S.D.N.Y. Jul 14, 2023), ECF No. 67; *see also* Order, *Czarnionka v. The Epoch Times Association, Inc.*, No. 1:22-cv-06348 (S.D.N.Y. June 8, 2023), ECF No. 63 (holding in abeyance defendant's motion on the pleadings in light of mediation); Order, *Harris v. Public Broadcasting Service*, No. 1:22-cv-02456 (N.D. Ga. June 2, 2023), ECF No. 59; *see also* Order, *Harris v. Public Broadcasting Service*, No. 1:22-cv-02456 (N.D. Ga. Apr. 14, 2023), ECF No. 57 (staying case to allow for potential resolution).

   *ii.*   *The Statutes Violate the First Amendment.*

The U.S. argues that NASCAR's as-applied challenge fails because the VPPA withstands intermediate scrutiny under *Central Hudson* (Doc. 22-1 at 13). The VPPA is vague and overbroad because it fails to provide a curtailed definition of what constitutes a "video tape service provider." Rather than make clear the types of entities regulated by the statute, the statute is being interpreted

to allow for regulation of any "business" that "delivers" audio visual materials. Therefore, the VPPA, as applied to NASCAR in the manner Plaintiffs contend, is far too vague and overbroad because, pursuant to the definition of a VTSP, NASCAR is potentially subject to the VPPA as a "video tape service provider" and prohibited from sharing otherwise legal commercial information with third-parties, as is common in all commercial industries, even though NASCAR is nothing like the "video rental store" contemplated by Congress when enacting the VPPA. This Court, therefore, should find the statutes, as applied to NASCAR, are unconstitutional.

### III. CONCLUSION

For the foregoing reasons and those set forth in NASCAR's Motion to Dismiss and Reply, NASCAR respectfully requests that if this Court does not dismiss Plaintiffs' VPPA claims on the other bases advanced in NASCAR's briefing, then the Court dismiss Plaintiffs' claims because the VPPA is unconstitutional on its face and as applied to NASCAR.

Dated: August 23, 2024

Respectfully submitted,

JOHNSTON ALLISON HORD, PA

By:     /s/ Greg C. Ahlum
Greg C. Ahlum (#14021)
JOHNSTON ALLISON HORD, PA
1065 East Morehead Street
Charlotte, NC 28204
Telephone:   704.998.2319
Facsimile:     704.376.1628
gahlum@jahlaw.com

BAKER & HOSTETLER LLP

Bonnie Keane DelGobbo (*pro hac vice*)
Joel C. Griswold (*pro hac vice*)
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 3700
Chicago, IL 60606-2841

Telephone: 312.416.6200
Facsimile: 312.416.6201
bdelgobbo@bakerlaw.com
jcgriswold@bakerlaw.com

*Attorneys for Defendants National Association for Stock Car Auto Racing, LLC and NASCAR Digital Media, LLC*

## CERTIFICATION OF WORD COUNT

I hereby certify, subject to Rule 11, that Defendants National Association for Stock Car Auto Racing, LLC and NASCAR Digital Media's Response in Opposition to the United States' Memorandum in Support of the Constitutionality of the Video Privacy Protection Act does not exceed 4,500 words exclusive of case caption, table of contents, table of authorities and certifications of counsel.

/s/ Greg C. Ahlum

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed on August 23, 2024 with the Clerk of Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

<em>/s/ Greg C. Ahlum</em>