**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Case No. 3:23-cv-00888-FDW-SCR**

| | |
|---|---|
| **ANGELA MYERS, OSCAR RODRIGUEZ, PAUL SUTTON, TREVOR ADKINS, BRENT RISH, DEREK SAMMELMAN, and MARY MARTIN, on behalf of themselves and all those similarly situated,** | ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) ) |
| **v.** | ) ) |
| **NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC., and NASCAR DIGITAL MEDIA, LLC,** | ) ) ) ) |
| **Defendants.** | ) ) |

## STIPULATION AND ORDER CONCERNING PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Plaintiffs Paul Sutton, Trevor Adkins, Brent Rish, and Derek Sammelman and Defendants National Association for Stock Car Auto Racing, LLC and NASCAR Digital Media, LLC, through their counsel, hereby respectfully submit this Stipulation and Order Concerning Protocol for the Production of Electronically Stored Information ("ESI Protocol") in the above-captioned action (the "Action").

WHEREAS, counsel for the Parties have met and conferred regarding the discovery of documents and electronically stored information ("ESI") in this Action and have entered into this ESI Protocol to facilitate the just, speedy, and inexpensive conduct of discovery of ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention.

THEREFORE, the Parties stipulate and agree as follows:

I. **DEFINITIONS**

a. "Parties" collectively shall mean all named parties to this Action, including any party added or joined to any complaint in these proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

b. "Producing Party" means any Party or non-party to this Action who produces documents or ESI pursuant to any discovery request, subpoena, or otherwise.

c. "Receiving Party" means a Party or non-party to this Action who requests the protections provided by this ESI Protocol.

II. **GENERAL PROVISIONS**

a. **Applicability.** Unless otherwise agreed to by the parties, this ESI Protocol governs the production of documents and information in this Action. Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of the Parties under the Federal Rules of Civil Procedure, the Local Rules of the Western District of North Carolina ("Civil Local Rules") and any other applicable state and federal statutes, orders and rules. To the extent additional obligations or rights not addressed in this ESI Protocol arise under the Federal Rules of Civil Procedure, the Civil Local Rules, or any other applicable state and federal statutes, orders, and rules, they shall be controlling.

b. **Proportionality.** The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan.

c. **Limitations and Non-Waiver.** The Parties and their attorneys do not intend by this ESI Protocol to waive their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, and any other privilege or immunity that may be applicable.

The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents or ESI are preserved and may be asserted at any time. This ESI Protocol does not govern the appropriate scope of discovery under Rule 26(b)(1), custodian selection and search parameters, or impose any obligations beyond those in the Federal Rules of Civil Procedure.

   d. **Authenticity and Admissibility.** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

   e. **Modification by Agreement.** Any practice or procedure set forth herein may be modified by written agreement of the Parties. Any Party added or joined to this Action and any Party to actions that may be consolidated into or coordinated with this Action after the date of this ESI Protocol that seeks to deviate from the ESI Protocol set forth herein must obtain leave of Court to do so unless all Parties otherwise consent in writing.

   f. **Modification by Court Order.** Nothing in this ESI Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with counsel for the opposing Party, and the Parties shall use reasonable best efforts to negotiate an amendment of this ESI Protocol prior to seeking relief from the Court.

   g. **Confidential Information/ClawBack.** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations under the Stipulation and Protective Order Governing Confidentiality of Discovery Material ("Stipulated Protective Order") entered into by

and between the Parties in this Action. If there is any inconsistency between this ESI Protocol and the Stipulated Protective Order, the terms of the Stipulated Protective Order shall govern. Consistent with Section IV of the Stipulation and Protective Order Governing Confidentiality of Discovery Material, this Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d) and Fed. R. Evid. 502(e); the provisions of Fed. R. Evid. 502(b) are inapplicable to any productions under this Order.

       h.      A Party seeking to claw back Privileged Material (as such term is defined in the Stipulated Protective Order) shall follow the procedures outlined in **Appendix B**.

       i.      **Safe Harbor.** The Parties agree to be bound by the "safe harbor" provision of Fed. R. Civ. P. 37(e) and the Advisory Committee Notes to that Rule. Consistent with these authorities, a Party shall not be in violation of this Order if, despite the Party's good faith efforts to preserve ESI, ESI are altered, lost, overwritten, or destroyed as a result of the Party's routine, good faith operation of its information or computer system(s). This includes, but is not limited to: (a) good faith upgrading, loading, reprogramming, customizing, or migrating software or hardware; and (b) good faith inputting, accessing, updating, or modifying data in an accounting or other business databases maintained on an individual transaction, invoice or purchase order basis in an accounting or other business database, provided the preservation requirements above, are satisfied.

## III.    PRESERVATION

      The Parties agree that they shall continue to take reasonable steps to preserve potentially relevant documents and ESI, including Metadata identified in **Appendix A**, in accordance with their obligations under the Federal Rules of Civil Procedure and other applicable laws. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with

this Action.  The Parties agree that by preserving documents or providing information about the Parties' preservation efforts, they are not conceding that such material is discoverable or relevant.

## IV.    PRODUCTION OF STRUCTURED DATA

The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production in traditional (e.g., TIFF) formats. To the extent a response to discovery requires the production of discoverable electronic information contained in a database or other structured data format, the Parties agree to meet and confer in good faith regarding an appropriate production format including, if necessary, parameters for querying the database or relevant system for discoverable information, the method for generating a report in a reasonably usable and exportable electronic file (e.g., Excel, CSV or SQL format).

## V.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

a.    The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant ESI.

b.    While this ESI Protocol is intended to address the majority of documents and data sources handled in this matter, there may be situations where the Parties come into contact with data sources, such as ESI from social media, collaboration tools (e.g., Slack, Microsoft Teams), mobile device apps, and modern cloud sources, that are not specifically addressed herein.  In the event such data sources are relevant, the Parties agree to make reasonable efforts to address such data sources appropriately and, upon request of the Receiving Party, to meet and confer regarding relevant production formats for such ESI.

c.    The Parties shall cooperate in the development of appropriate search methodology and criteria, including the potential use of Technology Assisted Review ("TAR"), if deemed appropriate.  The Parties will meet and confer and attempt in good faith to reach agreement

regarding the following: (i) the identity of custodians who may have discoverable ESI; (ii) the number of custodians from whom ESI should be searched; and (iii) the search terms, phrases, or parameters to be used in searching databases for responsive ESI; and (iv) if TAR is to be used, the parameters of the TAR model, including any search terms, email threading, or other filtering methods applied before or after TAR, and criteria for evaluating and accepting the results of the TAR model. For the avoidance of any doubt, a Producing Party is at liberty to use any methodology and tool for the purpose of prioritizing and/or expediting the review, so long as no documents are removed from attorney review or production based on such methodology. A Producing Party may always conduct a manual review for responsiveness and privilege, whether or not search terms or TAR are also utilized.

        d.        Non-Discoverable Information. The parties agree that the following data categories shall be deemed inaccessible and therefore, not discoverable, and should not be preserved:

          i.      Deleted, slack, fragmented, or other data only accessible by forensics, unless it contains unique and exclusive relevant information not available anywhere else.

         ii.      Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

        iii.      Online access data such as temporary internet files, history, cache, cookies, and the like, unless it contains unique and exclusive relevant information not available anywhere else.

        iv.      Data in metadata fields that are frequently updated automatically, such as last opened date. To be clear, this does not include certain types of metadata

and information embedded into webpages and elements of webpages containing pre-recorded videos or otherwise containing pre-recorded videos, made accessible through the NASCAR Website—*which must be maintained.*

v. Backup and archive data that are substantially duplicative of data that are more accessible elsewhere.

vi. Data remaining from systems no longer in use that is unintelligible on the systems in use and where there is no reasonable way to convert the data to a universal format such as CSV, XLSX, TXT, SQL, XML, etc.

vii. Data from personal information management applications (such as Microsoft Outlook) (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, or Android, and devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

## VI. PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

The following production specifications apply to documents that existed in paper format prior to production ("Hard Copy Documents"). Documents that originated as paper, but which were scanned and maintained electronically by a Party prior to the inception of this Action shall be produced in accordance with Part VII of this ESI Protocol. The Parties agree to produce Hard Copy Documents in the formats described below to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If a Producing Party intends to produce any Hard Copy Documents in any manner other than as specified herein, the Producing Party shall notify the Receiving Party of its intent, including

production format (e.g., produced as paper, made available for inspection). If the proposed production format is not acceptable to the Receiving Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Hard Copy Documents.

a. **TIFFs.** Hard Copy Documents should be scanned as single-page, black and white, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Bates numbers, confidentiality designations (in accordance with the Stipulated Protective Order governing this Action), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b. **Unitizing Documents.** The Parties shall undertake reasonable efforts to ensure that, in scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container.

c. **Parent-Child Relationships.** The Parties agree that if any part of a Hard Copy Document or its attachments is responsive, the entire document and attachments must be produced, except for any attachments that may be withheld or redacted on the basis of any privilege or work-product or other protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread. The child-document(s) should be consecutively produced immediately after the parent-document.

Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

        d.      **OCR.** Hard Copy Documents shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

        e.      **Unique IDs.** Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon as practicable thereafter. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the Action.

        f.      **Data Load Files.** Hard Copy Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

            i.      Field Separator: ASCII character 20 ("¶");

            ii.      Quote: ASCII character 254 ("þ"); and

            iii.      New Line: ASCII character 174 ("®").

            iv.      Concordance-compatible image and data load files should be provided in a "Data" folder.

g.      **Metadata.**  Each of the Metadata and coding fields set forth in **Appendix A** shall be produced for that Hard Copy Document to the extent reasonably available.

h.      **Color.**  Documents containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the Requesting Party may request that the document or ESI item be produced in its original colors. For such documents, the Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI).

## VII.    PRODUCTION FORMAT FOR ELECTRONICALLY STORED INFORMATION

The Parties agree to produce ESI in the formats described below.  These formats are deemed to be productions in reasonably usable form.  If any Party contends that particular documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such documents.

a.      **TIFFs.**  Documents should be produced as single-page, black and white, Group IV TIFF images using at least 300 DPI.  To the extent possible through an automated process, the document's original orientation should be maintained (i.e., portrait-to-portrait and landscape-to-landscape). In the event the original orientation of documents in a production appears to be altered (e.g., emails are inverted or sideways) the Receiving Party may request the reproduction of those documents in their original orientation. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image.  TIFF image files should be provided in an "Images" folder.

b.      **Extracted Text Files.**  The full text of native files should be extracted directly from

the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text.

    c. **Unique IDs.** Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon thereafter as practicable. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in this Action.

    d. **Parent-Child Relationships.** The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread. The child-document(s) should be consecutively produced immediately after the parent-document. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. Hyperlinked documents and modern attachments will not be treated as conventional attachments for the purpose of

preserving a family relationship for production. The Producing Party will consider reasonable requests for the production of hyperlinked documents on a case-by-case basis, to the extent technically feasible.

e. **Metadata.** The Parties agree that Metadata will be produced for all produced documents and ESI, whether produced in Native Format or as TIFF images. **Appendix A** sets forth the metadata fields that must be produced to the extent that metadata exists for a particular document. Metadata fields for documents that are partially redacted for privilege that do not contain privileged information should still be produced. Nothing herein shall require any Party to create or produce metadata that does not exist or is not reasonably or technically accessible.

f. **Native Format.** The processed native for all spreadsheets (i.e., MS Excel, .CSV, or similar), computer slide presentations (e.g., PowerPoint presentations), source code, and electronic information containing audio or video components should be produced and linked to the database by the metadata field "NativeLink." Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format. The placeholder will be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

g. **Redaction of Native Files.** To the extent that a native spreadsheet must be redacted, the Producing Party must redact the Native File or, if such redaction is not practicable, produce TIFF images with burned-in redactions in lieu of a Native File and TIFF placeholder image, provided the TIFF images are reasonably usable. If redacting TIFF images, the Producing

Party should make reasonable efforts to cause such images to legibly present all information in the spreadsheet. To the extent the redacted spreadsheet is not reasonably usable, the Receiving Party may request that it be produced as a redacted Native File. If good cause exists, the Receiving Party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the Receiving Party to the extent the document was originally produced with concealed information. The Producing Party shall not unreasonably deny such a request.

h. **Request for Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in Native Format. If good cause exists for the Receiving Party to request production of certain documents in Native Format, the Receiving Party may request production in Native Format by providing a list of the Bates numbers of documents it requests to be produced in Native Format. The Producing Party shall not unreasonably deny such requests. Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each Native File in such production, and all Extracted Text and applicable metadata fields.

i. **Hidden Content.** To the extent that a document or ESI was saved with hidden content, such as comments or tracked changes, the document or ESI shall be imaged showing that hidden content, to the extent the Producing Party can practicably do so using an automated process. If, for some reason, a document cannot be imaged to show hidden text, it will be produced in Native Format.

j. **Password Protected Files.** The Parties agree that they will take reasonable steps to unencrypt and index any password-protected documents or other encrypted containers prior to applying search terms, TAR, or other filtering methodologies. To the extent security protection for such documents and ESI cannot be successfully processed despite reasonable efforts, the

Producing Party shall notify the Receiving Party of the number of documents affected for each custodian and agree to meet and confer should the Receiving Party request additional information about such files.

      k.    **Embedded Documents.** Non-image files embedded within documents, such as spreadsheets within a PowerPoint, will be extracted as separate documents and treated like attachments to the document in which they were embedded. The Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in **Appendix A**. Graphic objects embedded within documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate documents.

      l.    **Data Load Files**. Documents should be provided with an Opticon OPT File and Concordance DAT file using standard Concordance delimiters:

      i.    Text Delimiter AKA "Quote" – "þ", Hex (FE), Unicode (U+00FE), Decimal (254) 2;

      ii.    Field Separator AKA "Comma" – "", Hex (14), ASCII character 20 ("¶");

      iii.    Unicode (U+0014), Decimal (20);

      iv.    Quote: ASCII character 254 ("þ"); and

      v.    New Line: ASCII character 174 ("®").

All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the CC field contains semi-colons between Email addresses, the Tag field should also contain semi-colons. Concordance-compatible image and data load files should be provided in a "Data" folder. Parties have the option to exchange sample load files. If this exchange occurs, the Receiving Party will have 14 days to

respond with Load File change requests. Nothing in this ESI Protocol will limit the Parties from discussing Load File changes throughout the course of the Action.

m.     **Deduplication.** A producing party will de-duplicate electronic documents and will not produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians or (2) emails that contain the same content, sender, and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform. However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively, the Producing Party may utilize a separate "All Custodians" field, which identifies all custodians of the subject document.

n.     **Email Threading.** Email threads are email communications that contain prior or lesser-included email communications that may also exist separately in the Party's electronic document collection. The Parties reserve the right to use email threading to reduce the overall amount of ESI and documents produced and use email thread suppression to avoid the review and production of information contained within an existing email thread in another document being reviewed and produced. Participants in lesser-included emails that otherwise would have been

subject to review shall be listed in the most-inclusive email's "All Custodians" field included in the data load file. The Receiving Party reserves the right to request lesser included emails for completeness under the evidentiary rules and for good cause shown.

o. **Production of Audio and Video Recordings.** The Parties shall meet and confer before producing audio and video recordings other than in their native format.

p. **Production of Transcripts.** If deposition or other transcripts are responsive, the Parties should meet and confer to determine a mutually agreeable format for producing the transcripts.

q. **Custodian or Originating Source.** The Custodian shall be identified in the Custodian field of the database load files. Documents collected from a natural person should be produced in such a fashion as to identify the natural person. Documents collected from non-custodial sources, such as shared files, storage locations, or drives, should be produced in such a fashion as to identify the department, group, entity, or facility from which the documents were collected. A Producing Party shall make reasonable efforts to use a uniform description of a particular Custodian across productions.

r. **Color.** Documents not produced in native format containing color need not be produced in color in the first instance unless the color is necessary to understand the meaning or content of the document. Additionally, if good cause exists for the Receiving Party to request production of certain documents in color, the Receiving Party may request production of such documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests. The Parties reserve the right to allocate costs of color productions if they become burdensome.

s. **Foreign Language.** Foreign language text files and Metadata should be delivered

with the correct encoding to enable the preservation of the document's original language.

t.  **Date Format.**

i.      If a time is not available, such as the estimated date for a coded document, then 12:00 am, or 00:00 should be assigned, i.e., 12/21/1999 00:00.

ii.     Date delimiters, such as slashes and colons, must be consistent across all fields.  In the format of MM/dd/YYYY, there are no spaces and only forward slashes.

iii.    Date formats must be consistent within any one field.

iv.     Date formats must be consistent across all fields, i.e., a record with a sent date should have the same format in the last modified date field.

Unless otherwise specified by a Producing Party, the Producing Parties shall make reasonable efforts to process all ESI using a single time zone and make clear which time zone applies.  For the avoidance of doubt, no party will be required to re-process any ESI that has been processed prior to the date of this ESI Protocol for purposes of complying with this provision. To the extent a Producing Party cannot process ESI with these time zones, it shall disclose the same and the Parties shall meet and confer regarding a reasonable alternative.

u.  **Production Media.**  The preferred means of producing documents is via secure FTP or secure file share.  However, documents may also be produced via encrypted flash drive, encrypted hard drive or encrypted CD or DVD.  To the extent possible, physical media should be protected before it is produced.

v.  **Naming Convention for Production Media.**  Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc.  The compressed file should be named so as to indicate Producing Party, the date of the production, and the sequence of the production (e.g., "NASCAR Production 20200401-

001"). If the production is made using physical media, the media should be labeled to include: (a) text referencing that it was produced in *Myers et al. v. National Association for Stock Car Auto Racing, Inc. et al.*; and (b) the Bates number range of the materials contained on the media.

      w.    **Replacement Productions.**  Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

      x.    **Encrypted Data.**  To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data.

      y.    **Confidentiality Designations.** If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or pursuant to the terms of the Parties' Stipulated Protective Order entered by the Court in this Action, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Receiving Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. A Party's failure to comply with the procedures set forth in this ESI Protocol shall not waive that Party's or any other person's right to assert that information is private, confidential, or otherwise protected.

## VIII.  ASSERTIONS OF PRIVILEGE

      a.    The Producing Party will produce a privilege log within 30 days after the last

production. The Parties will meet and confer to establish a format for privilege logs and redaction consistent with the Federal Rules of Civil Procedure. Prior to the generation of a privilege log, the parties shall meet and confer in a good faith effort to reach an agreement on the manner in which a privilege log will be generated and the contents of such a log. The parties shall consider whether the nature and volume of the privileged documents and ESI warrants category-by-category privilege logs, metadata log, or some combination of these approaches.

    b.  The following documents presumptively need not be included on a privilege log:

        i.  Communications exclusively between a Party and its in-house or outside counsel regarding this Action;

        ii.  Work product created by outside counsel, or by an agent of outside counsel other than a Party, testifying expert, or third-party vendor, regarding this Action.

        iii.  Redacted emails need not be logged as long as the objective metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document may be requested. Non-email documents need not be logged if the reason for the redaction is noted on the face of the document in the redacted area.

## IX.   THIRD PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this

Protocol with the subpoena and state that the Parties to the Action have requested that third-parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall promptly notify the other Parties when it receives non-party productions, and shall provide copies of such productions to the other parties in the format in which they were received from the third-party within five days. In the event that the format of a third-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Receiving Parties. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

        **SO ORDERED**.

Signed: January 30, 2025

Susan C. Rodriguez
United States Magistrate Judge

STIPULATED TO:

| THE VAN WINKLE LAW FIRM | BAKER & HOSTETLER LLP |
|---|---|
| By  /s/ David M. Wilkerson | /s/ Greg C. Ahlum |
|  | By: |
| Dated: January 28, 2025 | Dated: January 28, 2025 |

David M. Wilkerson (#35742)
The Van Winkle Law Firm
11 North Market Street
Asheville, NC 28801
(828) 258-2991
dwilkerson@vwlawfirm.com

Bonnie Keane DelGobbo (*pro hac vice*)
Joel C. Griswold (*pro hac vice*)
BAKER & HOSTETLER LLP
One North Wacker Drive
Suite 3700
Chicago, IL 60606-2841
Telephone: 312.416.6200
Facsimile: 312.416.6201

Mark S. Reich*
Courtney Maccarone*
Gary S. Ishimoto*
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com
Email: gishimoto@zlk.com

Scott Edelsberg*
Adam Schwartzbaum*
**EDELSBERG LAW**
20900 NE 30TH Ave #417
Aventura, FL 33180
Telephone: (786) 289-9471
Email: scott@edelsberglaw.com
Email: adam@edelsberglaw.com

*Attorneys for Plaintiffs*

*pro hac vice* forthcoming

bdelgobbo@bakerlaw.com
jcgriswold@bakerlaw.com

Greg C. Ahlum (#14021)
JOHNSTON ALLISON HORD, PA
1065 East Morehead Street
Charlotte, NC 28204
Telephone: 704.998.2319
Facsimile: 704.376.1628
gahlum@jahlaw.com

*Attorneys for Defendants National
Association for Stock Car Auto Racing,
LLC and NASCAR Digital Media, LLC*

## APPENDIX A: REQUIRED METADATA FIELDS

| Field Name[1] | Populated For | Field Description |
|---|---|---|
| BegBates | All | Control Numbers for start of document |
| EndBates | All | Control Numbers for end of document |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family) |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family) |
| Attachment Count | All | Number of attachments |
| Custodian | All | Custodian name (ex. John Doe) |
| CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| LogicalPath | All | The directory structure of the original file(s). Any container name is included in the path. For email, this should be the email folder path (e.g. jdoe.pst\inbox) |
| AllPaths | All | This field should be populated with the folder paths of all duplicate files (Email and Edocs) that were suppressed during deduplication. |
| Hash value | All | The MD5 or SHA-I hash value |
| PgCount | All | Page Count or an Image Count, if auto generated |
| NativeFile | All | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| TimeSent | Email | Time email was sent |
| DateMod | Email, Edoc | Date the document was modified |
| TimeModified | Email, Edox | Time the document was modified |
| TimeSent | Email | Time email was sent |
| TimeZoneUsed | Email | Time zone used to process data during document collection and processing |
| ReceiveTime | Email | Time email was received |
| ReceiveDate | Email | Date email was received |
| To | Email | All recipients that were included on the 'To' line of the email |
| From | Email | The name and email address of the sender of the email |

---

[1] The Field Names and Descriptions in this ESI Protocol are meant to serve as a guide; the Parties acknowledge that Field Names can vary from system to system and even between different versions of systems.

| CC | Email | All recipients that were included on the "CC" line of the email |
|---|---|---|
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| DateCreated | Edoc | Date the document was created |
| TimeCreated | Edoc | Time the document was created |
| FileName | Email, Edoc | File name of the edoc or email |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | All | File extension of the document |
| TextPath | All | Relative path to the document level text file |
| Redacted | All | "X,"""Y,"" "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter |
| Confidentiality | All | Populated if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
| Production Volume | All | Production Volume Name |
| DocType | All | Description of document (Email, Attachment, EDoc, Hard Copy, etc) |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |

## APPENDIX B – CLAWBACK PROCEDURES

Any Party who has received a notification of disclosure of Privileged Information from a Producing Party shall follow the following procedure to ensure all copies of Privileged Information are appropriately returned, sequestered, or destroyed from the Receiving Party's system:

i.      Locate each recall document in the document review/production database and return, sequester, or destroy the record from the database;

ii.     If there is a native file link to the recalled document, return, sequester, or destroy the native file from the network path;

iii.    If the database has an image load file, locate the document image(s) loaded into the viewing software and return, sequester, or destroy the image file(s) corresponding to the recalled documents. Remove the line(s) corresponding to the document image(s) from the image load file;

iv.     Apply the same process to any additional copies of the document or database, where possible;

v.      Locate and return, sequester, or destroy all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be returned, sequestered, or destroyed and rendered unusable, with the exception of production media received from the recalling Party, which shall be treated as described herein;

vi.     If the document was produced in a write-protected format, the Party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the Receiving Party shall destroy and render unusable the original production media; or (ii) allow the Receiving Party to

retain the original production media, in which case the Receiving Party shall take steps to ensure that the recalled document will not be used; and

      vii.    Confirm that the recall of Privileged Information under this procedure is complete by way of letter to the Party seeking to recall Privileged Information.